# ROHDE&SCHWARZ

Rohde & Schwarz USA, Inc.
6821 Benjamin Franklin Dr / Columbia MD 21046-2663 /

William Clark
Federon Procurement Solutions
3856 Barcroft Lane
Alexandria VA  22312

**Quotation Contact:**

Phone    +1 410-910-8048
rsaquotes@rsa.rohde-schwarz.com

**Account Manager:**

David Thompson
Phone    +1 303-495-9672
david.thompson@rsa.rohde-schwarz.com

August 23, 2023

**Subject:**          **NIST - NTS50T - Notice ID NB671010-23-02100**
**Quote Number:**     **776169.0**

Main Number  +1 888-837-8772

www.rsa.rohde-schwarz.com

Thank you for your interest in Rohde & Schwarz USA, Inc..  The attached quote shall constitute our legally binding, firm offer (the "Offer").

To accept this Offer and place an order with us, please e-mail your purchase order referencing the Quote Number above to:

rsaorders@rsa.rohde-schwarz.com.

Should you require assistance with your order, please do not hesitate to contact the Account Manager provided on the quote.

Best regards,

Rohde & Schwarz USA, Inc.

Liz Lagana
Senior Order Processing Manager

**EXHIBIT A**

# ROHDE&SCHWARZ



| Item | Model | Part Number | Qty. pc. | Unit Price USD | Total Price USD |
|---|---|---|---|---|---|
| | Description / Estimated Delivery (Weeks) | | | | |
| 1 | **NTS50T KIT** K02 NTS50T matched standards Delivery time: 48 weeks | 1700.1639.02 | **4** | 33,855.00 | **135,420.00** |
| 2 | **NTS50T KIT** K03 NTS50T open-circuit standard Delivery time: 48 weeks | 1700.1639.03 | **1** | 34,760.00 | **34,760.00** |
| 3 | **NTS50T KIT** K04  NTS50T short-circuit standard Delivery time: 48 weeks | 1700.1639.04 | **1** | 34,760.00 | **34,760.00** |
| 4 | **NTS50T KIT** K05  NTS50T mismatched standard Delivery time: 48 weeks | 1700.1639.05 | **1** | 34,760.00 | **34,760.00** |
| | | **Total Net Price** | | **USD** | **239,700.00** |

Essential technical modifications may make it necessary to replace certain items ordered by the customer with new successor items. In this case, the customer agrees to the modification of the subject matter of the contract even after placement of the order, provided that the agreed terms and conditions are retained and that the successor item complies with the technical specifications of the item ordered by the customer.

The customer has to make all payments from a bank account under their name. The customer is liable for all payments from the contractual relationship and must ensure compliance with all applicable legislation, in particular on the prevention of money laundering.

**ROHDE&SCHWARZ**

**Offer Validity:** This Offer shall be firm and valid through October 18, 2023.

**Applicable Terms & Conditions:** This Offer and your ("Customer's") acceptance hereof are subject to and limited to the product descriptions, prices, quantities, and other terms and conditions contained on this Quote and either (a) the terms and conditions of the preexisting Master/Framework Agreement between the parties identified above, if any, and only to the extent applicable to the products quoted herein; or, (b) if no such agreement is shown above, or to the extent products quoted herein are not included in the Master/Framework Agreement, the R&S Terms & Conditions of Sale, attached hereto and incorporated herein. In case of conflict or inconsistency, the order of precedence shall be: (1) The terms appearing on this Quote; and (2) the terms and conditions of the preexisting Master/Framework Agreement identified above or the attached R&S Terms & Conditions of Sale, whichever is applicable; and (3) any applicable statement of work.

**Terms of Delivery:** FOB (Free on board)
Destination: Customer's ship-to address in the U.S.
Ship via: Rohde & Schwarz Preferred Carrier

**Delivery Lead Time:** The delivery lead times shown on the Quote are estimates reflecting known circumstances at the time this Offer is made and are subject to change. The target shipment date will be confirmed in Rohde & Schwarz's Order Acknowledgment.

**Tax:** Prices shown do not include sales, use, value-added, or other taxes unless expressly indicated. Please provide any applicable tax exemption certificates and/or direct pay information with your purchase order

**Payment Terms:** 30 days after date of invoice

**Quote Number:** Please include the Quote number on your purchase order.

**First Time Customers:** Please include your Dunn & Bradstreet number and standard credit reference sheet.

**Service Agreements:** Guarantee your fixed cost of ownership with Rohde & Schwarz predefined and custom service agreements. More information on R&S Services can be found here: https://www.rohde-schwarz.com/us/customer-support/service/extended-warranty-service-contracts/warranty-extension_230938.html

**ROHDE&SCHWARZ**



## Terms & Conditions of Sale
## Version: September 2022

1. Exclusive Terms & Conditions.  These Terms & Conditions of Sale and the Quote attached hereto constitute Rohde & Schwarz USA, Inc.'s ("RSA's") legally-binding, firm offer (collectively, the "Offer") concerning the provision of products, including hardware and software, services such as installation, assembly, calibration, training, and corrective maintenance, or a project for a custom set of products and services comprising a system or solution (collectively, "Deliverables") to the customer identified on the Quote ("Customer"). After a Quote is issued RSA shall be entitled to make further checks and inquiries solely regarding: (a) the creditworthiness and financial standing of the Customer; (b) the applicable "know your customer" rules and regulations; and (c) the applicable embargo and sanction lists. RSA reserves the right to demand adequate assurances of due performance and/or advance payments or to cancel the Quote or agreement if such checks and inquires reveal reasonable grounds for insecurity with respect to Customer's performance or if required by law, order, rule, or regulation. Such demand or cancellation shall be without any liability whatsoever to Customer. RSA expressly limits Customer's acceptance of this Offer to the terms hereof, and Customer's purchase order ("Order") constitutes acceptance without modification. RSA's order acknowledgement ("Order Acknowledgement") confirms receipt of Customer's Order/acceptance. RSA objects to and rejects any proposed additional or different terms in the Order or in any other communications from Customer. Proposed terms shall only apply if RSA, in its sole discretion, expressly adopts them in writing. RSA's silence shall not be deemed to constitute acceptance of proposed additional or different terms. Upon receipt of Customer's Order, this Offer and any proposed additional or different terms agreed to by RSA in writing, if any, shall constitute the parties' legally binding contract (the "Agreement").

2. Prices and Terms of Payment.  Prices exclude all sales, use, value-added, or other taxes, which shall be borne by Customer and, unless billed by and paid to RSA, shall be paid by Customer directly to the relevant government authorities. If Customer is the importer of record, payment to the broker will not relieve Customer of liability for customs-related charges, duties, or taxes, if not remitted by broker. Prices reflect RSA's costs at the time of Offer. RSA reserves the right to adjust prices if target delivery dates are later than 4 months after the Order date and RSA's costs increase prior to delivery. Unless the Quote specifies an alternative arrangement: (i) all prices are valid for sixty (60) days from Offer date; and (ii) payment terms are conditioned upon approved credit and are Net 30 days from invoice date, without deduction or setoff. RSA may modify payment terms if, in RSA's opinion, the payment record or financial condition of Customer so warrants, or if RSA otherwise has reasonable grounds to feel insecure about receiving payment. Any dispute about the quality, condition, performance, or functioning of Deliverables or otherwise in connection with this Agreement, shall not entitle Customer to refuse to pay for the Deliverables. Customer shall make all payments to RSA when due from a bank account in Customer's name only. Customer shall be solely liable for all payments due hereunder and must ensure compliance with all applicable federal, state, and local laws, rules, and regulations, in particular with respect to the prevention of money laundering. Customer shall pay a late fee in the amount of 1.5% of the unpaid balance of any invoice(s) for each month or partial month that such invoice(s) are not paid in full in accordance with the payment terms set forth herein. Additionally, Customer shall reimburse RSA for any costs and/or expenses incurred in connection with the collection of unpaid invoices including without limitation court costs, reasonable attorneys' fees, and collection agency fees. Payments received from Customer shall be applied in the following order: (i) to reimbursement of collection costs; (ii) to accumulated late fees; then (iii) to outstanding invoice amounts.

3. Delivery, Quality, Substitutes.  Delivery shall be F.O.B. destination in the United States via RSA's preferred carrier, unless otherwise specified in the Quote. Customer shall specify a requested delivery date in its Order, which date shall be within 180 days from the Order date. No illustrations, drawings, weights, performance specifications in brochures, cost estimates and data sheets, or other documents shall constitute a guaranteed specification regarding the quality of the Deliverables, unless agreed by RSA in writing. RSA may replace individual products or components with substitute products or components as a result of developments, improvements, or innovations, prior to delivery to Customer and without notice to Customer provided that (i) such successor products or components otherwise comply with the specifications of the product(s) ordered by Customer, and (ii) the price therefor remains unchanged.

4. Delivery Timelines.  RSA will use reasonable efforts to meet the target delivery dates set forth in the Order Acknowledgement (the "Delivery Timelines"). RSA does not guarantee delivery on or by the Delivery Timelines and deliveries are further subject to Customer's timely and proper performance of its pertinent obligations including without limitation: (i) timely payments to RSA; (ii) timely provision of materials, if applicable; and (iii) timely delivery of all documents, authorizations and approvals to RSA including, e.g., delivery of a duly signed end-user certificate, if required for RSA to apply for an export license. RSA is not responsible for delivery delays caused by Customer. RSA may extend the Delivery Timelines as RSA determines is necessary, including a reasonable ramp-up period, if Customer does not promptly perform its obligations. If RSA is otherwise unable to meet the Delivery Timelines in whole or in part, the parties shall agree to alternative arrangements. In the absence of such arrangements, Customer's sole and exclusive remedy for delayed deliveries not caused by Customer is the right to cancel the Order with respect to affected Deliverables if delivery is delayed for more than 30 days past the Delivery Timelines. Subject to acceptance or rejection at RSA's discretion in each instance, Customer may request to reschedule or cancel an Order, provided that: (i) such request is made in writing to RSA and received by RSA no later than 45 days before the applicable Delivery Timelines; and (ii) a request to reschedule includes a new target delivery date that is within 180 days from the original Order date. For each accepted request, RSA may charge a rescheduling/cancellation fee of 5% of the Order value for the affected Deliverables. In addition, if delivery is delayed at Customer's request or for other reasons not attributable to RSA, RSA may charge Customer storage fees in an amount equal to one-half percent (0.5%) of the value of the Deliverables concerned for each month or part thereof, starting on the first day after the original target delivery date. Fees assessed by RSA shall not constitute an election of remedies.

5. Acceptance.  Customer shall accept all received Deliverables even if minor defects are identified. Early delivery and partial deliveries shall be permitted insofar as Customer can be reasonably expected to accept such deliveries. If Customer fails to accept the Deliverables



**ROHDE&SCHWARZ**

within 10 days of delivery or rejects the Deliverables without justification, the Deliverables shall be deemed to have been accepted 10 days following delivery ("Acceptance"). The Deliverables shall also be deemed to have been accepted if and when Customer takes any act inconsistent with RSA's ownership including, without limitation, if the Deliverables are resold or have been put to use.

6. Transfer of Risk.  The risk of loss of the Deliverables shall be transferred to Customer in accordance with the applicable shipment terms, even if installation or assembly on Customer's premises has been agreed. If delivery, assembly, installation, or Acceptance is delayed at Customer's request, because Customer is in default in taking delivery, or for other reasons for which Customer is responsible, then the risk of loss associated with the Deliverables affected by the delay shall be transferred to Customer upon the commencement of such delay and for the period of this delay. RSA shall take precautionary measures regarding the Deliverables as reasonably requested by Customer, at Customer's expense.

7. Retention of Title.  Title to products delivered shall remain with RSA, and RSA retains a security interest in the products or proceeds thereof, until full payment for the products has been received by RSA. RSA may perfect its security interest by any necessary filings in public registers and Customer shall execute all necessary documents and otherwise cooperate with RSA in connection therewith. Customer shall insure the products at its own expense against any loss and/or damage caused to the products for any reason, including, but not limited to, fire, water, theft and natural hazards etc., with the sum insured being adequate to cover the replacement value of the affected product. If maintenance, calibration and/or inspection work becomes necessary, Customer shall carry out such work in a diligent manner and in good time and at its own expense. In the event of attachment, seizure and/or any other restrictions imposed by third parties on the products that are subject to a security interest hereunder, Customer shall notify such third party without delay that the products are encumbered by a security interest in favor of RSA and shall further notify RSA, in writing, without delay so that RSA may enforce its rights. Customer shall have the right to resell the products that are subject to a security interest hereunder in its ordinary course of business insofar as it is not in default of payment. In relation thereto, Customer agrees to assign, by way of security, any subsequent claims for payment in full that Customer may have against its customers arising from such resale of the products that are subject to a security interest in favor of RSA. If the products subject to a security interest are resold by Customer together with other products, without an individual price being agreed for the products subject to the retention of title, Customer further assigns, by way of security, the portion of its total price claim that corresponds to the price agreed with RSA for the products subject to the security interest in favor of RSA. RSA accepts such assignment. Customer shall be authorized to collect the claims assigned to RSA as mentioned above until such authorization is revoked by RSA. If Customer acts in breach of contract – in particular in cases involving payment default – or if there are reasonable grounds to suspect Customer's over-indebtedness or imminent insolvency, RSA may revoke the authorization to collect such claims and demand that Customer promptly disclose to RSA the assigned claims and the individual debtors and notify the individual debtors of the assignment and provide RSA with all documents and information required by RSA to assert the claims directly. The assignment of claims and the provisions set forth herein shall apply even if the security interest provided for is invalid in accordance with the mandatory provisions of law that apply in the country in which the product is located. Customer shall notify RSA in writing without delay if an application for the opening of insolvency proceedings has been filed against it.

8. Customer's Obligations.  If the Deliverables include RSA's performance of services such as, but not limited to, installation, assembly, calibration or corrective maintenance, then Customer shall (i) ensure RSA has safe access to and use of Customer's facilities to perform such services, and (ii) timely provide to RSA all Customer-furnished items required by RSA to perform such services, including, but not limited to, accessories and, in cases involving third party products, instructions for use, descriptions, and data sheets, before RSA's commencement of such services. Transport of such items in both directions shall be at the cost and risk of Customer. Customer shall complete in advance all preparatory work necessary to permit RSA to immediately commence the provision of services upon the arrival of RSA personnel and to continue without interruption. At its own expense, Customer shall timely procure and provide all supporting personnel, ancillary work to be performed by third parties, consumer goods and materials, power supply, water, outlets and supply lines, protective clothing and protective devices, and suitable premises (including premises on which to store materials), in the required quality and suitability. Official authorizations shall also be timely obtained by Customer and at its own expense, and any site-specific rules for the prevention of accidents must be communicated to RSA in advance of RSA's arrival. Prior to the commencement of services, Customer shall make all necessary information available to RSA including, but not limited to, information on the location of hidden lines, the design of Customer's own wireless network infrastructure, and the necessary structural data etc., without having to be requested to do so by RSA. If RSA has justified doubts regarding the quality and suitability of Customer-furnished items or Customer's cooperation, RSA reserves the right to refuse performance of services or to refuse to assume any liability in connection with such services, Customer-furnished items, or RSA's use of Customer-furnished items, as a condition of performance. If there is more than one suitable place where the services can be performed, RSA shall have the right to determine the place of performance in its sole and absolute discretion.

9. Software.  RSA and its parent company are and shall remain the exclusive owner(s) of all rights, title, and interest in and to or, as applicable, are the authorized licensees of all software (including source code and object code) incorporated or embedded in the Deliverable(s) ("Firmware") and all software comprising the Deliverable(s) ("Software Product(s)"), including without limitation any and all current and future rights in copyrights, trade secrets, trademarks, mask works, patents, design rights, trade dress, right of privacy or publicity, moral rights, and any other intellectual property rights subsisting in, arising from, or related to the Firmware and Software Products that may exist anywhere in the world, whether unregistered, registered, or comprising an application for registration. Firmware and Software Products collectively are referred to herein as "Software." Subject to the restrictions set forth in this Section and the license limitations specified in the Quote, RSA grants Customer the non-exclusive, non-transferable (except as permitted below), non-sublicensable license to use, as applicable, one copy of the Firmware on and solely in connection with the corresponding unit of product purchased, or one copy of the Software Product(s) in machine readable form for each license purchased, as set forth in the Quote, solely for Customer's internal business purposes. Customer's right to use Software Product(s) is limited to the period of time, if any, specified in the applicable Quote. In the absence of such specified period, or with respect to Firmware, Customer's right of use shall be unlimited in time. Licensee may install and use the Software Product(s) on only one designated computer at a time, which computer is not used as a



**ROHDE&SCHWARZ**

server for a network. Licensee may physically transfer the Software Product(s) from one computer to another, or electronically transfer them over a network, provided that the total number of copies in use at any given time does not exceed the total number of licenses purchased as shown in the Quote. Customer may not make any copies of the Software Product(s) or portions thereof except copies made solely for backup or archival purposes. Customer may make copies of the documentation only as reasonably necessary for its authorized use of the Software Product(s). The licenses and Software Product(s) provided to Customer hereunder may not be sold, rented, assigned, sublicensed or otherwise transferred by Customer to any third party without the prior written consent of RSA. Customer is not licensed to use the Software to train persons other than Customer's employees and contractors performing services on behalf of Customer. Customer may not modify or translate the Software or create derivative works based on all or any part of the Software. Where Customer's right to use Firmware is unlimited in time, Customer has the right to transfer such rights of use to third parties solely in connection with the contemporaneous transfer of the product on which the Firmware is installed. If Customer transfers the right of use to a third party, it is obliged to impose the obligations and restrictions set out in this Section on the third party. Customer shall be responsible and liable to RSA for any violation of this Section by such third parties. The foregoing license shall automatically terminate if Customer violates or fails to comply with any of the restrictions or obligations set forth in this Section. Customer will not acquire any license, title, or any ownership to or in any Software, except for the license granted in this Section. Customer shall not, and shall not permit others to, decompile, reverse engineer, disassemble, or otherwise attempt to derive source code for the Software, including without limitation, human-readable computer code, related programmer comments, and procedural language. Customer shall not remove, obscure, or alter RSA's copyright notice, trademarks, or other proprietary rights notices affixed to or contained within the Software or documentation and shall reproduce all titles, trademarks, and copyright and restricted rights notices in any lawful copies of the Software and documentation. Software may contain parts that are subject to separate terms of use of third parties (for example, any third party proprietary software or open source software) that may take precedence over the provisions set out in this Section. Upon Customer's request, RSA shall make available such third party's separate terms of use. RSA shall provide Customer with Software solely in machine-readable format (object code) and without source code or source code documentation. If, however, a third party's separate terms of use include the provision of source code, RSA shall, at Customer's request, either provide Customer with such source code that is to be made available, or make it available for download. The above provisions shall also apply to any modifications, enhancements, updates, upgrades, or supplements made to the Software or associated documentation. RSA reserves any and all other rights in and to the Software and the documentation not expressly granted in this Section.

10. Limited Warranty.  RSA warrants the Deliverables to be free from defects in materials and workmanship under normal use and service for a period of twelve (12) months following the date of Acceptance, unless a longer period is specified on the Quote (the "Limited Warranty Period"). Deliverables comprised of Software are additionally warranted to operate substantially in accordance with the applicable published specifications and documentation during the Limited Warranty Period, but are not warranted to be error free. During the Limited Warranty Period, Customer shall provide detailed written notice of any defects to RSA. RSA's obligation under this warranty is limited to (i) repairing or replacing a Deliverable that, upon examination, RSA determines to be defective; or (ii) the reperformance of any services determined to be deficient, as applicable. If RSA determines the failure or malfunction of a Deliverable has been caused by misuse, use contrary to product specifications or instructions, neglect, accident, or abnormal condition of operation, repairs will be made and Customer shall be billed for the reasonable costs of examination and repair. RSA shall not be responsible for any malfunctioning or defect of the products in the event that Customer shall have made modifications thereto without RSA's authorization. Deliverables that have been repaired or replaced under this Limited Warranty may include remanufactured or refurbished materials or units which are equivalent to new in terms of performance and functionality. As to Deliverables comprised of Software, only reproducible material deviations from the applicable specifications or documentation shall be deemed to constitute defects under this limited warranty. Such defect shall not, however, be deemed to exist if it does not occur in the latest version of Software supplied to Customer and if Customer can be reasonably expected to use such latest version. Furthermore, Customer shall have no claims under this limited warranty if the alleged defect is caused by or related to one of the following circumstances: (i) incompatibility of the Software with the data processing environment used by Customer, unless this is explicitly provided for in the applicable documentation; (ii) use of the Software together with software supplied by third parties which use is not expressly endorsed in the applicable documentation; or (iii) improper maintenance of the Software by Customer or third parties. Following repair, replacement, or reperformance, the applicable Limited Warranty Period shall continue for a period of 90 days or until the expiration of the original Limited Warranty Period, whichever is longer. THE FOREGOING LIMITED WARRANTY AND CORRESPONDING REMEDIES ARE EXCLUSIVE AND ARE IN LIEU OF ALL OTHER REMEDIES AND WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE.

11. Limitation of Liability. IN NO EVENT SHALL RSA BE LIABLE TO CUSTOMER OR TO ANY THIRD PARTY FOR CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE OR ENHANCED DAMAGES, LOST PROFITS OR REVENUES, BUSINESS INTERRUPTION, COST OF COVER OR SUBSTITUTE GOODS, LOSS OF USE, LOSS OF PRODUCTION, OR LOSS OF DATA, ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH THIS AGREEMENT, ANY OTHER AGREEMENT BETWEEN RSA AND CUSTOMER, ANY DELIVERABLE, OR ANY SERVICE PROVIDED BY RSA HEREUNDER, REGARDLESS OF (A) WHETHER SUCH DAMAGES WERE FORESEEABLE, (B) WHETHER OR NOT RSA WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND (C) THE LEGAL OR EQUITABLE THEORY (CONTRACT, TORT OR OTHERWISE) UPON WHICH THE CLAIM IS BASED. IN NO EVENT SHALL RSA'S AGGREGATE LIABILITY ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH THIS AGREEMENT, ANY DELIVERABLE, OR ANY SERVICE PROVIDED BY RSA HEREUNDER, EXCEED THE TOTAL AMOUNTS ACTUALLY PAID OR PAYABLE BY CUSTOMER TO RSA FOR THE DELIVERABLE(S) OR SERVICES THAT FORM THE BASIS OF THE CLAIM OR CAUSE OF ACTION IN EACH INSTANCE. Any action or proceeding arising from or in connection with this Agreement must be commenced within one (1) year from the date that the underlying claim or cause of action accrues, or such claim or cause of action shall be deemed untimely and time-barred.

12. Indemnification.  At its expense, RSA will settle or defend and pay all damages and costs finally awarded in any action brought against



# ROHDE&SCHWARZ

Customer to the extent that it is based on a claim that a Deliverable infringes any patent, copyright, or other intellectual property right of a third party in the country of delivery, provided that (i) Customer promptly gives RSA notice of such claim; (ii) Customer grants RSA the authority and assistance necessary to defend or settle the claim; and (iii) the infringement is not caused by and does not arise out of RSA's compliance with Customer's specifications, Customer's use or combination of the Deliverable with or as an addition to products not supplied by RSA, or from a modification of the Deliverable by Customer or a third party after delivery. If any Deliverable is in RSA's opinion likely to cause or lead to a claim of infringement, RSA at its option and expense may procure for Customer the right to continue using the Deliverable, modify the Deliverable to make it non-infringing, replace the Deliverable with a substantially equivalent non-infringing Deliverable, or recall the Deliverable and grant Customer a credit for the depreciated value of the recalled Deliverable after it is returned to RSA. Upon such recall, RSA shall have no further obligation or liability relating to the allegedly infringing Deliverable other than RSA's obligation to defend or settle the infringement claim as set forth above. RSA's obligations as set forth in this Section shall be Customer's sole and exclusive remedy in connection with any third party claim of infringement arising from or related to any Deliverable.

13. Confidentiality.  Customer agrees to hold in confidence the terms of this Agreement, including without limitation all pricing and discount information, and any and all non-public information disclosed to Customer pursuant to or in connection with this Agreement (hereinafter "Proprietary Information"). Customer shall not disclose, transfer, provide or otherwise make available in whole or in part, the Proprietary Information to any third party, except to its own employees or customers who require knowledge of same in connection with the purposes authorized by this Agreement and who have appropriate obligations of confidentiality to Customer. Customer shall use the same reasonable degree of care that it uses to protect its own proprietary information of similar character. Customer agrees to secure and protect the confidential nature of the Proprietary Information and to protect same against breach, compromise or violation of the rights of RSA and shall promptly notify RSA of any unauthorized disclosure or use of the Proprietary Information or any part thereof. Customer further agrees not to use the Proprietary Information except for its own internal business purposes or otherwise in the performance of its obligations under this Agreement.

14. Force Majeure.  No party shall be liable or responsible to the other party or be deemed in default for any failure or delay in fulfilling or performing any obligations or duties hereunder (except for any obligations to make timely payments), when such failure or delay is directly or indirectly caused by or results from acts, events or circumstances beyond the impacted party's control, including, without limitation, a Force Majeure Event. The term "Force Majeure Event" shall include, without limitation, war, invasion, hostilities (whether war is declared or not), riot or civil unrest, strike, labor stoppages or slowdowns, lockout, threats or acts of terrorism, nuclear accidents, government or sovereign acts or omissions (including without limitation failure or delay in granting any approvals, permits, licenses or allowances), a stoppage imposed by customs authorities, imposition of an embargo, blockades or sanctions by an authority or by an international, multinational or supranational body, national or regional emergency, epidemics, pandemics, transport restrictions and restrictions of energy consumption, general shortage of raw materials and common supplies, non-delivery or late delivery by sub-suppliers or sub-contractors, telecommunication breakdowns, power outages or shortages, cybersecurity attacks, lack of warehouse or storage space, inadequate transportation services, or inability or delay in obtaining supplies of adequate or suitable materials, acts of God, natural catastrophes and cases of unavoidable events (e.g., volcanic activity, earthquakes, thunderstorms, floods, fire, storms and other adverse weather conditions), as well as all other events that lie beyond the control of the party or its sub-suppliers or sub-contractors (whether or not similar to those listed) that are affected by such a Force Majeure Event. The party affected by a Force Majeure Event shall inform the other party of the event within a reasonable period. The contractual obligations affected by a Force Majeure Event shall be suspended and the periods for the performance of such contractual obligations shall be extended accordingly, together with a reasonable ramp-up period. Notwithstanding the foregoing, if the suspension of the contractual obligations due to a Force Majeure Event lasts longer than six (6) months, then each party shall be entitled (but not required) to cancel any outstanding deliveries to the extent affected by the Force Majeure Event, without further obligation to the other party in connection therewith.

15. Applicable Law / Arbitration.  This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Maryland, without giving effect to its conflict of law provisions. The application of the UN Convention on Contracts for the International Sale of Goods (CISG) shall be excluded. Any controversy or claim arising out of or relating to this Agreement, the breach hereof, or the Deliverables shall be finally and exclusively resolved by arbitration administered by the American Arbitration Association (AAA) using its Commercial Arbitration Rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Claims shall be heard by a panel of three (3) arbitrators, unless the parties agree upon a single arbitrator. The place of arbitration shall be the State of Maryland. Notwithstanding the requirement to arbitrate, as to any controversy or claim arising under Section 9 or Section 13, RSA shall have the right to seek injunctive and other temporary relief that will remain in effect until the final enforcement of the arbitration award, for which each party unconditionally submits to the exclusive jurisdiction and venue of the federal or state courts of Maryland. The costs of the arbitration proceedings shall be borne by the unsuccessful party or by both parties according to their win/loss ratio. The aforementioned costs of the arbitration proceedings include the costs of the AAA and the arbitrators' fees.

16. Final Provisions.  If any term or provision of this Agreement is found to be invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement. This Agreement, including the Quote and any additional or different terms agreed to by RSA in writing, constitute the sole and entire agreement of the parties with respect to the subject matter contained herein, and supersede all prior and contemporaneous discussions, negotiations, understandings, arrangements, agreements, representations, and warranties, both written and oral, with respect to such subject matter. No waiver under this Agreement is effective unless it is in writing, identified as a waiver, and signed by an authorized representative of the party waiving its right(s). Any waiver properly authorized on one occasion is effective only in that instance and only for the purpose stated, and does not operate as a waiver on any future occasion. Customer acknowledges that the Deliverables may be subject to export restrictions and end user certification. Customer shall not export, re-export, or transfer, directly or indirectly, any Deliverable or technical data received hereunder, to any country or user to which such actions are restricted by United States or local country law or regulation without first obtaining any required governmental license, authorization, certification or approval. Customer shall be responsible for United States export duties, fees, licenses and such, in



**ROHDE&SCHWARZ**

addition to any import duties imposed by the country of destination.

ROHDE & SCHWARZ USA, INC., 6821 Benjamin Franklin Drive, Columbia, MD 21046

**ROHDE&SCHWARZ**